RICHARDS v. SCHRODER.

In the fall of 1856, L. rented of W. a portion of his brick-yard, for the purpose of making bricks. L. subsequently made a kiln of bricks, and left them in W.'s charge and possession, for him to sell for L.'s benefit. In January, 1857, L. made and delivered a bill of sale of the bricks to R., and informed W. of the same, but there was no change of possession under the bill of sale. S., the defendant, as constable, seized the bricks under a process against L., and sold them as the property of L.: *Held*, that L.'s sale to R. was a fraud as against the creditors of L., and that defendant was justifiable in taking the bricks and selling the same.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action of *replevin*, to recover a kiln of bricks. The bricks were seized by the defendant, as constable, under an attachment, and subsequently sold under an execution issued out of a Justice's Court, upon a judgment in favor of William Waite, and against Lander Loring.

The material facts, as found by the referee, (his report being the agreed statement on appeal,) are as follows:

In the fall of 1856, one Lander Loring rented of Peter Webster a portion of his brick-yard on Mission Creek, for the purpose of making bricks; that Loring made a kiln of bricks upon said yard, containing about 150,000 bricks. After the bricks were burnt, they remained in the kiln, on Webster's premises, and Loring left them in the exclusive charge and possession of Webster, with directions to sell the same for Loring's benefit. Afterwards, on the second day of January, 1857, Loring made and delivered to plaintiff a bill of sale of the bricks, which is in the following words:

*"Richards & Brother,*     "SAN FRANCISCO, January 2, 1857.

"Bought of Lander Loring, one kiln of bricks, containing one hundred and fifty thousand, for $1200.

     "Received payment,          LANDER LORING."

The said bill of sale was given to secure the sum of $500, then due from Loring to plaintiff. There was no change of possession under this bill of sale, and the bricks would have been lessened in value, by breakage, in a removal. In the latter part of March, 1857, Loring, with the approbation of plaintiff, informed Webster of the sale to plaintiff, and directed him to pay plaintiff the amount of his claim out of the proceeds arising from the sale of bricks. Webster acknowledged plaintiff's claim, and afterwards sold some of the bricks, and agreed to account to plaintiff therefor. On the sixteenth day of March, 1857, there were about 90,000 bricks in the kiln unsold, which the defendant, as constable, seized under an attachment in favor of Waite, and against Loring; judgment was subsequently obtained, execution issued, and the bricks sold by defendant, as constable, to satisfy the same. The referee also finds that Waite knew of plaintiff's claim when he commenced his action by attachment.

As a conclusion of law, the referee found that the bricks were rightfully seized and sold by defendant, and that defendant is entitled to a judgment.

Judgment was entered for the defendant. Plaintiff moved for a new trial, which was denied, and he appealed to this Court.

*John Reynolds* for Appellant.

1. Webster held possession as the bailee of Loring, until the production to him of the bill of sale of plaintiffs, and from that time he held them as the bailee of the plaintiffs.

A transfer of the agency of Webster from Loring to the plaintiffs, was the only delivery the nature of the property would admit of.

The sale to the plaintiffs was not complete until Webster was notified to hold the property for the plaintiffs instead of Loring. Shindler *v.* Houston, 1 Denio, 48; Mottram *v.* Heyer, 1 Denio, 483; Bates *v.* Conkling, 10 Wend., 390; Wilkes *v.* Ferris, 3 Johns., 335; Bailey *v.* Ogden, 3 Johns., 420; Jones *v.* Post & Co., 6 Cal., 102; Horr and Dick *v.* Barker and Paddock, 8 Cal., 603; 2 New York Revised Statutes, 136, §§ 3 and 5.

By reference to the third and fifth sections of the Statute of Frauds, in New York, it will be found to be identical with ours, as to mortgages, so far as it relates to the possession and delivery thereof, requiring that there shall be an actual and continued change of possession. And it is under these sections that the decisions cited were made.

Section seventeen of our Statute of Frauds (Comp. Laws, 201) provides that " no mortgage of personal property hereafter made shall be valid against any other person than the parties thereto, unless possession of the mortgaged property be delivered to and retained by the mortgagee."

The possession of personal property is presumptive evidence

of ownership or title thereto.  Hutchinson *v.* Bours, 6 Cal., 383. And that presumption is conclusive in favor of a third person, under this section of our statute, against mortgagees, the mortgagor being in possession.

But no such presumption can arise when the mortgagor is out of the actual possession of the property.

In the case at bar, the possession of the property was in Webster, and the presumption protected by the statute did not exist as to Loring or his creditors.

In such case, the mortgagor can deliver only what he has. He has the title to the property, and the right to the possession. And that right he transferred to the plaintiffs, on the production of which to Webster the plaintiffs were entitled to be put in the place and stead of Loring.   It was equivalent to a delivery-order.   It was produced to Webster, and plaintiffs' rights under it were recognized, and from that time everything of which Loring was invested was transferred to the plaintiffs. All the possession which he had was transferred.

How could third persons be misled in this matter ?

When the property was found in the possession of Webster, the presumption was that it was his, and by the same means that that presumption could be removed by the ascertainment of the true state of the case, it could and would also be ascertained for whom he held it.

In this case, the plaintiff in the execution did ascertain, by inquiry, the whole facts, that it was not Webster's property, and that it was charged with plaintiffs' mortgage.

He, as every person must have done, when he learned that the property was Loring's, learned also that it was mortgaged to plaintiffs.   And he took it, therefore, subject to plaintiffs' mortgage, and had no right to remove it out of Webster's possession until it was paid.

Suppose Webster himself, instead of the plaintiffs, had loaned the money and taken the mortgage.   I suppose it will hardly be contended that he could not have held the property till his mortgage was paid, and yet there would have been no change of possession.   And I think there is no distinction, in principle, between the two cases.

The position of the referee, in this case, which is sustained by the Court below, is that there must be an actual corporeal change of the thing itself, which position we controvert.

2. The plaintiffs had a right to retain the possession of the property until the mortgage was paid.   Bank of Lansingburgh *v.* Crary, 1 Barb., 542.   Although a levy might be made upon the mortgagor's interest.   Ib.

If it were not for our statute requiring this change of possession, then the property might be taken by the officer, subject to the mortgage, for the mortgagor would be entitled to the posses-

sion until condition broken. But our statute has placed the mortgagee in the same position before the breach as he was in New York after, as to the possession. 1 Barb., 5, 48.

The Supreme Court of this State adhere to the same rule as in New York, as to what constitutes a delivery. It must be such acts as are sufficient to apprise strangers, or persons interested, upon inquiry, of the change in the ownership and control of the property. Gardet v. Belknap, 1 Cal., 399 ; Jones v. Post & Co., 6 Cal. R., 102 ; Horr et. al. v. Barker et al., 8 Cal. R., 603.

3. The facts found do not justify the conclusion of the law, and the report should have been set aside. See cases already cited. Headly v. Reed, 2 Cal., 322.

*James A McDougall*, for Appellant, filed a brief, taking similar grounds to those taken by Mr. Reynolds.

*James McCabe* for Respondents.

In answer to appellants' first point, we say that the referee, having found that there was no delivery under the bill of sale (or, more properly, chattel mortgage) from Loring to Richards & Richards, and there being no statement of the evidence adduced on the trial before the referee, it is impossible for any Court to say that the finding of the referee was not warranted. by the evidence. See Tyson v. Wells and Skinner, 2 Cal. Rep., 122; Grayson v. Guild and Lightner, 4 Cal. Rep., 122, and the cases therein cited.

To the second point, we say, the appellants in this point assume that they had once had the possession of the property, which is not the fact, as the report of the referee shows. It is an absurdity to talk about retaining possession, etc., when they never had possession. Hence, it is useless to determine what their rights would have been if they had ever been in possession.

The referee having found that there was no change of possession, under the mortgage, the case at bar stands on a parallel with that of Chenery v. Palmer, 6 Cal. R., 119. See, also, Fitzgerald v. Gorham, 4 Cal. Rep., 289 ; Samuels v. Gorham, 5 Cal. Rep., 226 ; § 15 of the Statute of Frauds, 201, Compiled Laws of California.

As to the. third *point*, we say that the facts found by the referee do justify the conclusions of law, and the referee could not legally have come to any other conclusions, as fully appears by the cases last above cited.

TERRY, C. J., delivered the opinion of the Court—FIELD, J., and BALDWIN, J., concurring.

The referee's report shows conclusively that there was no delivery of the goods in question under the bill of sale from Loring to plaintiff. They continued in the possession of Webster,

who was Loring's bailee, and who was directed by Loring to pay to plaintiff the amount of his claim against Loring, out of money arising from sales of the property.

The facts reported bring the transaction fully within the fifteenth section of the Statute of Frauds, and a new trial was properly refused.

Judgment affirmed.